**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Hinton, et al., | No. CV-24-01817-PHX-SMM |
| Plaintiffs, | **DEFAULT JUDGMENT** |
| v. | |
| Chretin's Family LLC, | |
| Defendant. | |

Pending before the Court is Plaintiffs' Motion for Default Judgment Against Chretin's Family, LLC. (Doc. 15). For the reasons stated below, the Court grants in part, and denies in part, the Motion.

## I.   BACKGROUND

Nine plaintiffs bring claims against Defendant Chretin's Family, LLC, for Defendant's misappropriation of Plaintiffs' images in their advertisements and social media posts. Plaintiffs bring nine claims: (1) false association in violation of § 43 of the Lanham Act, 15. U.S.C. § 1125 *et seq.*, (2) a violation of the common law right of publicity, (3) unfair or deceptive trade practices under A.R.S. Title 44, Chapter 9, *et seq.*, (4) common law unfair competition, (5) defamation, (6) negligence and *respondeat superior*, (7) conversion, and (8) unjust enrichment, and (9) quantum meruit. (See Doc. 1). Plaintiffs seek actual and punitive damages, costs and fees, attorney's fees, and a permanent injunction against Defendant from using Plaintiffs' images in any medium to promote Defendant or Defendant's events. (Doc. 1 at 29).

Defendant owns and operates The Kress Ultra Lounge, a nightclub based in Yuma, Arizona. Defendant posts advertisements for their nightclub and its upcoming events through their publicly available social media pages. The Complaint asserts that, on several occasions, Defendant misappropriated and intentionally altered photos from Plaintiffs' social media pages in order to make it appear that Plaintiffs worked at, endorsed, or were otherwise associated or affiliated with Defendant's nightclub in advertisements posted on Defendant's social media pages. Further, the Complaint states that none of the Plaintiffs ever consented to Defendant's use of the images, nor have any ever been employed by or affiliated with Defendant or its events.

Plaintiffs filed this action on July 23, 2024, and obtained a summons for Defendant that same day. (Docs. 1; 2). Plaintiffs served Defendant on July 29, 2024, and filed proof of service on July 31, 2024. (Doc. 6). Defendants did not answer or otherwise respond to the Complaint. Plaintiffs moved for the entry of default against Defendant on August 29, 2024. (Doc. 9). The Clerk of the Court entered the default on August 30, 2024. (Doc. 11). Plaintiffs filed the instant Motion for Default Judgment on October 25, 2024. (Doc. 15).

**II.    LEGAL STANDARD**

Rules 55(a) of the Federal Rules of Civil Procedure requires that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  Once a party is found to be in default, on the plaintiff's motion, the Court may enter a default judgment. Fed. R. Civ. P. 55(b).  After an entry of default, the Court may grant a default judgment on the merits of the case. Twentieth Century Fox Film Corp. v. Streeter, 438 F.Supp.2d 1065, 1070 (D. Ariz. 2006).

Rule 55 does not require the entry of judgment against a defaulting party, as "the decision whether to enter a default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In determining whether to grant a default judgment, "[t]he general rule of law [is] that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys. Inc. v.

1 Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 2007); Aldabe, 616 F.2d at 1092 (9th Cir. 1980).

2 When a defendant defaults, that default acts as an admission of the Complaint's well-pleaded allegations of fact. DirecTV, Inc. v. Hoa Huynh, 503 F.3d 847, 851 (9th Cir. 2007); Cripps v. Life Ins. Co., 980 F.2d 1261, 1267 (9th Circ. 1992). However, a defendant's default does not establish claims that are legally insufficient; a default still requires that the stated cause of action in the Complaint have the requisite facts to establish each element of each claim. DirecTV, Inc., 503 F.3d at 854.

"Plaintiff is required to prove all damages sought in the complaint." Philip Morris USA v. Castworld Prods, Inc., 219 F.R.D at 494, 498 (C.D. Cal. 2003). In its determination of damages, the Court may rely on the declarations submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2).

**III.   DISCUSSION**

As the Defendant has not answered or otherwise appeared in this action, Plaintiffs request that the Court enter a default judgment against Defendants in the amount of $265,000 for the fair market value of Defendant's commercial use of Plaintiffs' images. (Doc. 15-1 at 4). Plaintiffs provided a declaration from Stephen Chamberlin, who detailed the analysis and factors that culminated in his determination of Plaintiffs' damages. (Doc. 15-2, Exh. A). Mr. Chamberlin is a model and talent agent with ample experience in the industry of valuating image uses and model contracts. Id. Plaintiffs request, as supported by Mr. Chamberlin's Declaration, that the total damages of $265,000 be divided among the Plaintiffs as follows:

    A.  $60,000 to Plaintiff Hinton
    B.  $40,000 to Plaintiff Guzman
    C.  $40,000 to Plaintiff Sampedro
    D.  $20,000 to Plaintiff Gray
    E.  $10,000 to Plaintiff Milani
    F.  $20,000 to Plaintiff Pepaj
    G.  $25,000 to Plaintiff Acosta

    H.  $30,000 to Plaintiff Crespo

    I.  $20,000 to Plaintiff Terrell

(Doc. 15-2, Exh. 2, at 20).

The Court may consider the following factors in their discretion to the entry of a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### a.  Jurisdiction and Service of Process

The Court has an affirmative duty to investigate its jurisdiction over both the subject matter and the parties when an entry of judgment is sought against a party who has failed to plead or otherwise defend. In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). Therefore, the Court will analyze the matters of subject matter jurisdiction and personal jurisdiction first.

### 1. Subject Matter Jurisdiction

First, the court has subject matter jurisdiction over Plaintiffs' claims because Plaintiffs bring a claim under the Lanham Act. The Lanham Act broadly grants federal subject-matter jurisdiction over "all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties." La Quinta Worldwide LLC v. Q.R.T.M., S.A de C.V., 762 F.3d 867, 873 (9th Cir. 2014), citing 15 U.S.C. § 1121(a). The Court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III…" 28 U.S.C. § 1367(a); see also Kuba v. 1–A Agric. Ass'n, 387 F.3d 850, 855–56 (9th Cir. 2004) ("Nonfederal claims part of the same 'case' as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.").

Here, the court may exercise supplemental jurisdiction over Plaintiffs' state law claims because they arise from the same case or controversy as Plaintiffs' Lanham Act claim. At issue here is Defendant's use of Plaintiffs' images, and all claims arise from this controversy. Therefore, the court has subject matter jurisdiction over Plaintiffs' claims.

### 2. Personal Jurisdiction

Second, the Court has personal jurisdiction over the Defendant because Defendant is a citizen of Arizona and was properly served. According to the Complaint, Defendant is "a limited liability company organized and existing pursuant to the laws of the State of Arizona, with its principal place of business … [in] Yuma, Arizona." (Doc 1. at 3). Additionally, the Complaint states that Defendant operates the subject of this controversy, its social media pages, and its apposite nightclub, the Kress Ultra Lounge. (Docs 1. at 14, 3).

As for service of process, a federal court lacks jurisdiction over a defendant who has not been properly served; so, the Court must "assess the adequacy of service of process on the party against whom default is requested" before entering default judgment. Zekelman Indus. Inc. v. Marker, 2020 WL 1495210, at *3 (D. Ariz. 2020), quoting Golden Scorpio Corp. v. Steel Horse Saloon I, 2009 WL 976598, at *1 (D. Ariz. 2009). The Court should apply state procedural law for service of process. Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 815 (9th Cir. 1985). In Arizona, an LLC may be served by "delivering a copy of the summons and the pleading to a … managing or general agent … authorized to receive service of process." Ariz. R. Civ. P. 4.1(i).

Here, Defendant was adequately served. Plaintiffs served Robert V. Rodriguez, the "statutory agent, who is designated by law to accept service on behalf of" Defendant on July 29, 2024 at 2:48PM. (Doc. 6). So, Defendant, an LLC, was served by delivering a copy of the summons to a managing or general agent, Mr. Rodriguez, who is authorized to receive service of process. Ariz. R. Civ. P. 4.1(i). Therefore, the Defendant was properly served according to Arizona procedural law. Accordingly, the Court has personal jurisdiction.

**b. Eitel Factors**

The Court finds that without great elaboration or specific identification of all <u>Eitel</u> factors, the evidence provided by Plaintiffs in the Complaint and Mr. Chamberlin's declaration clearly satisfies all the <u>Eitel</u> factors. (<u>see generally</u>, Doc. 15-2). The Court will now detail the satisfaction of every factor.

### 1. The Possibility of Prejudice to the Plaintiffs

The first <u>Eitel</u> factor favors the Plaintiffs because the Plaintiffs will be prejudiced if default judgment is denied. Defendant has failed to respond or appear in any way after having been properly served. (Doc. 15 at 2). Denial of default judgment will cause Plaintiffs to incur additional attorney's fees and delay in resolving Plaintiffs' claims. Additionally, Plaintiffs have no alternative means to recover their damages. See <u>PepsiCo, Inc. v. Cal. Sec. Cans</u>, 238 F.Supp.2d, 1172 (C.D. Cal. 2002). Therefore, the first <u>Eitel</u> factor favors Plaintiffs.

### 2. The Merits of the Claims and Sufficiency of the Complaint

The closely connected second and third <u>Eitel</u> factors are commonly considered together. When combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." <u>Id.</u> at 1175. Here, Plaintiffs set forth clear allegations that Defendant clearly misappropriated and intentionally altered Plaintiffs' images to falsely make it appear that Plaintiffs worked at or were affiliated with Defendant. (Doc. 1 at 5). No Plaintiff ever consented or authorized these false appearances. <u>Id.</u>

Plaintiffs bring forth several claims, of which the Court will now consider their merits and sufficiency in turn.

### A. Lanham Act and Common Law Right of Publicity Claim

Plaintiffs bring a claim pursuant to § 43 of The Lanham Act, 15 U.S.C § 1125. The Lanham Act provides wide discretion to the Court "to enter judgment for such sum as the court shall find to be just, according to the circumstances of the case," including factors like "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The Court may award only statutory damages in a sum

of not less than $750 or more than $30,000 as the court considers just. 17 U.S.C § 504(c)(1).

Here, the Court finds that, taking the allegations in the Complaint as true, Plaintiffs sufficiently stated claims for relief against Defendant for violations of the Lanham Act and of Arizona's common law right of publicity. A claim for false association under the Lanham Act has the following elements:
1) the defendant used a word, term, name, symbol, or device (or any combination thereof) or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact;
2) the usage was in commerce, in connection with goods or services;
3) the usage is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person; and
4) the plaintiff has been or is likely to be injured as a result of the usage

See 15 U.S.C. § 1125(a)(1)(A); see also Hinton v. Completely Innocent, 2022 WL 80049, at *4 (D. Ariz. 2022), citing Zekelman, 2020 WL 1495210 at *5 (D. Ariz. 2020). Here, all elements are satisfied. First, Defendant's nonpermissive use of Plaintiffs' images falsely or misleadingly represented that Plaintiffs were employed by or affiliated with Defendant. Second, the images were used in commerce to promote the goods or services of the Kress Ultra Lounge. Third, Defendant's nonpermissive use was likely to cause confusion by guests as to Plaintiffs' approval of the use of their images. Fourth, Plaintiffs have been injured as a result of this usage because they were denied fair market revenue of their name and likeness. Therefore, Plaintiffs sufficiently stated a claim for a violation of the false association provision of the Lanham Act.

Now, the Court turns to Plaintiffs' right of publicity claim. Notably, Arizona law recognizes a right of publicity. See In re Estate of Reynolds, 235 Ariz, 80, 82-83 (Ct. App. 2014). A right of publicity claim under Arizona law requires that Plaintiff(s) must show (1) the defendant's use of the plaintiff's name or likeness, (2) the appropriation of the plaintiff's name or likeness to the defendant's advantage, (3) lack of consent, and (4) resulting injury. Lemon v. Harlem Globetrotters Intern., Inc., 437 F. Supp.2d 1089, 1100 (D. Ariz 2006).

Here, Defendant's use of Plaintiffs' images satisfy all elements. First, Defendant

used Plaintiffs' likeness by posting their images. Second, the appropriation of Plaintiffs' likeness advantaged Defendant by promoting their nightclub. Third, Plaintiffs never consented to the use of their images. Fourth, Plaintiffs were injured by Defendant's use of their images because they were denied fair market revenue of their name and likeness. Therefore, Plaintiffs have sufficiently stated a claim for a violation of the right of publicity.

### B.  Unfair or Deceptive Trade Practices Claim

Plaintiffs' claim for unfair or deceptive trade practice fails because it was not sufficiently pleaded. A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Upon entry of default, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." PepsiCo, Inc. v. California Sec. Cans, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002). Additionally, the Ninth Circuit has suggested that the first two Eitel factors require that plaintiff(s) must "state a claim upon which the [plaintiff(s)] may recover." Id., quoting Kloepping v. Fireman's Fund, 1996 WL 75314, at *2 (N.D.Cal. 1996), citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978).

Plaintiffs' reference to A.R.S. Title 44, CH. 9, *et seq*, does not sufficiently allege a cause of action for unfair or deceptive trade practices. Plaintiffs broadly reference this statute but fail to specify any statute, case law, or other source that the Court may use to reference this claim. Additionally, Plaintiffs provide no requisite elements. Moreover, Plaintiffs failed to plead factual content that allows for the reasonable inference of liability. So, these allegations cannot be taken as true because they are not well-pleaded. In total, Plaintiffs failed to sufficiently state a claim upon which they may recover.

Therefore, the claim for unfair or deceptive trade practices claim fails.

### C.  Common Law Unfair Competition Claim

Plaintiffs' claim for common law unfair competition fails for the same reasons as discussed in section (B).

///

### D. Defamation Claim

Plaintiffs' claim for defamation fails for the same reasons as discussed in section (B).

### E. Negligence and *Respondeat Superior* Claim

Plaintiffs' claim for negligence and *respondeat superior* fails for the same reasons as discussed in section (B).

### F. Conversion Claim

Plaintiffs' claim for conversion fails for the same reasons as discussed in section (B).

### G. Unjust Enrichment Claim

Plaintiffs' claim for unjust enrichment fails for the same reasons as discussed in section (B).

### H. Quantum Meruit Claim

Plaintiffs' claim for quantum meruit fails for the same reasons as discussed in section (B).

### 3. The Amount of Money at Stake

The fourth Eitel factor weighs in favor of granting default judgment. In its determination, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." Completely Innocent, 2022 WL 80049, at *5 (D. Ariz. 2022), citing Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D 494, 500 (C.D. Cal 2003). "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." Zekelman, 2020 WL 1495210, at *4 (internal quotations omitted) (citation omitted).

The Court finds that the amount of money at stake is related to the seriousness of Defendant's conduct, but it is not so substantial or unreasonable to discourage default judgment. The Court will reduce the requested damages of $265,000 by $10,000, as explained further in section (c)(i). While $255,000 is a large sum of money, it will be divided among eight Plaintiffs according to the fair market value of the misappropriated

images. This market valuation considers many factors, including the individual model's standard day rate and the number of images shared of each model. Defendant repeatedly misappropriated Plaintiffs' images without their consent, using some photos more than once. Importantly, this information is supported extensively by Mr. Chamberlin, who detailed his longtime experience in the industry which shaped his methodological calculations. In all, $255,000 appropriately and reasonably compensates Plaintiffs for the damages incurred by Defendant's actions.

### 4. The Possibility of Dispute Concerning Material Facts

The fifth Eitel factor weighs in favor of granting default judgement. Plaintiffs sufficiently set forth their first two claims. While Plaintiffs failed to sufficiently detail or argue their other seven claims, such argument is unnecessary here. Satisfaction of these two claims is sufficient to award damages. The Complaint and Mr. Chamberlin's Declaration are sufficient and provide a clear picture. Here, Defendant misappropriated Plaintiffs' images on multiple occasions without compensating Plaintiffs justly according to the images' fair market value. Additionally, Defendant failed to appear or defend in any way, therefore failing to present at any time any dispute concerning material facts. The possibility of a dispute concerning these material facts is very low. Therefore, this element weighs in favor of granting default judgment.

### 5. Whether Default was Due to Excusable Neglect

Excusable neglect is an equitable determination which must consider all relevant circumstances. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 113 S.Ct. 1489, 1498 (1993) (explaining definition of excusable neglect). The Court must determine if there was excusable neglect within the context of a particular case, a context which the trial court is most familiar. Pincay v. Andrews, 389 F.3d 853, 859 (9th Cir 2004).

Here, Defendant was properly served and has never otherwise appeared in the case. Defendant's failure to appear is not an indication of excusable neglect. Additionally, the Court is unaware of any other relevant circumstances which may weigh in Defendant's favor. Therefore, this factor weighs in favor of granting default judgment.

### 6. The Policy Favoring a Decision on the Merits

This seventh Eitel factor will generally always weigh against granting default judgment. Cases should be decided on the merits wherever possible. Eitel, 782 F.2d at 1472. However, Rule 55(b) does not dispositively bar default judgment. Fed. R. Civ. P. 55(b); PepsiCo, 238 F.Supp.2d at 1177 ("This preference, standing alone, is not dispositive.") So, while this factor weighs against granting default judgment, it is outweighed by the other factors discussed above.

### c. Damages and Relief Sought

#### i. Damages

Plaintiffs bear the burden of proving all damages. Capitol Specialty Ins. Corp. v. Chaldean LLC, 2022 WL 2953062, at *2 (D. Ariz. 2022). "[A] default judgment must not differ in kind, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). This requirement is satisfied, as the requested relief is the same in the Complaint. (Doc. 1 at 29; Doc.15-1 at 4-5).

As to actual damages, the Court finds that $255,000 is appropriate. Violations of the Lanham Act award plaintiff(s) with a recovery of defendant's profits, any damages sustained by plaintiff(s), and the costs of the action. 15 U.S.C. § 1117(a). Here, Plaintiffs seek actual damages based on "the compensation each would and should have received for the use of her images by Defendant." (Doc. 15-1 at 4). Plaintiffs evince their damages through Mr. Chamberlin's sworn Declaration that details how Plaintiffs calculated the fair market value of their images and ensuing actual damages. Review of the declaration persuades the Court that $255,000 is appropriate. (see generally, Doc. 15-2 at 2-14). Mr. Chamberlin's experience from decades in the modelling and talent industries and expansive review of relevant information – including the images of Plaintiffs used by Defendant, the product advertised, the scope of distribution, the Plaintiffs' individual earning history, experience, and other factors affecting their earning capacity – all serve to support the purported fair market value. Id. Mr. Chamberlin's analysis "employed the same approach, methodology, and process that [he] would typically employ when determining

1  what to charge" an interested customer seeking to hire one of his clients. Id. at 7. Mr.
2  Chamberlin breaks down each Plaintiff's day rate, number of images used, and their fair
3  market value. Id. at 20. Therefore, the Court finds Mr. Chamberlin's declaration to be
4  thorough, well-founded, and sufficient evidence of the actual damages Plaintiffs suffered
5  in this case. Accordingly, the Court finds an award of $255,000 appropriate to award to
6  Plaintiffs in actual damages as outlined later.

7  Notably, the Court will not, at this time, award actual damages to Plaintiff Denise
8  Milani because she did not prove her damages. For the eight other Plaintiffs, Agent
9  provided a detailed and discernible breakdown of damages and subsequent calculation. Id.
10 However, for Plaintiff Milani, under the "# Images" column, the provided information is
11 listed as "2I/1S." Id. Provided beneath the table is a key which fails to define this term. Id.
12 Additionally, this term is not defined anywhere in Agent's 13-page declaration. (See
13 generally, Doc. 15-2 at 2-14). The Court does not know how to interpret "2I/1S." So,
14 Plaintiff Milani cannot prove her damages. The Court will order Plaintiffs to re-file
15 Plaintiff Milani's Motion, properly alleging damages sought.

16 Additionally, the Court will not award damages for punitive damages. An award of
17 punitive damages would plausibly establish that Defendant engaged in the sort of
18 intentional or egregious misconduct that is necessary for an award for punitive damages
19 under Arizona law. MLB Sales Inc. v. RK Gems LLC, 2024 WL 520638, at *2 (D. Ariz.
20 2024), citing Rawlings v. Apodaca, 726 P.2d 565, 578 (Ariz. 1986) ("[T]o obtain punitive
21 damages, plaintiff must prove that defendant's evil hand was guided by an evil mind.")
22 Having no evidence of such evidence of intentional or egregious misconduct, the Court
23 will not award punitive damages.

### ii. Costs and Fees

25 Plaintiffs seek an award of all costs and fees incurred from prosecuting this action.
26 (Doc. 15-1 at 5). Under the Lanham Act, a plaintiff's successful claim under 15 U.S.C §
27 1125(a) permits an award to plaintiff(s) for "the costs of the action." 15 U.S.C. § 1117(a).
28 In exceptional cases, the court may award reasonable attorney's fees to the prevailing party.

Id. Further, an award of attorney's fees is "never automatic and may be limited by equitable considerations." Id.

Here, the Court is unable to determine if an award of costs and attorney's fees is appropriate because Plaintiffs have not submitted accounting records, affidavits, or other evidence that indicates and verifies the amount of fees and costs incurred. The Court directs Plaintiffs to file any motion for attorneys' fees and/or costs in accordance with Fed. R. Civ. P. 54(d), LRCiv 54.1, and LRCiv 54.2. Therefore, the Court denies without prejudice Plaintiffs' request for costs and attorney's fees.

### iii. Permanent Injunction

Finally, Plaintiffs seek a permanent injunction against Defendant from using Plaintiffs' images. The Lanham Act provides that a district court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent a violation of . . . [§1125(a)]." 15 U.S.C 1116(a); Levi Strauss & Co. v. Shilon, 121 F. 3d 1309, 1314 (9th Cir. 1997). Injunctive relief is available in a default judgment under Fed. R. Civ. P. 55. U.S. v. Dutson, 2006 WL 1390816, at *1 (D. Ariz. 2006), citing S.E.C. v. Worthen, 95 F.3d 480 (9th Cir. 1996). However, "[a] plaintiff is not automatically entitled to an injunction simply because it proves its affirmative claims." PepsiCo, 238 F. Supp 2d at 1177 (citing Pyrodyne Corp. v. Pyrotronics Corp., 847 F.2d 1398, 1403 (9th. Cir. 1988)). Moreover, "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165 (2010). Plaintiffs seeking a permanent injunction must satisfy a four-factor test, demonstrating:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).

Here, Plaintiffs have failed to address any of the required four factors from eBay. Here, Plaintiffs allege that they were denied by Defendant the fair market value of their

images and that their reputations, character, and careers were harmed. But, this does not demonstrate (1) an irreparable injury, (2) that monetary damages are inadequate compensation, (3) that the balance of hardships is in Plaintiffs' favor, or (4) that the public interest would not be disserved by a permanent injunction. Plaintiffs' similarly worded request for injunctive relief has been denied by this court before, and this Court again "will not conduct the four-factor analysis *sua sponte*." Completely Innocent, 2022 WL 80049.

### IV. CONCLUSION

Therefore, the Court finds that Plaintiffs satisfied the Eitel factors for their claims of violations of the Lanham Act and the Arizona state law right of publicity. The Court additionally finds that this burden was not met for Plaintiffs' other seven claims. But, an award of damages does not require that all claims must be met, and the satisfaction of the first two is sufficient to award actual damages as follows. The Court concludes that the entry of default judgment is appropriate.

**Therefore,**

**IT IS ORDERED granting in part** Plaintiff's Motion for Default Judgment against Chretin's Family, LLC, as to Plaintiffs Hinton, Guzman, Sampedro, Gray, Pepaj, Acosta, Crespo, and Terell. (Doc. 15).

**IT IS FURTHER ORDERED awarding** Plaintiff Hinton $60,000 in actual damages.

**IT IS FURTHER ORDERED awarding** Plaintiff Guzman $40,000 in actual damages.

**IT IS FURTHER ORDERED awarding** Plaintiff Sampedro $40,000 in actual damages.

**IT IS FURTHER ORDERED awarding** Plaintiff Gray $20,000 in actual damages.

**IT IS FURTHER ORDERED awarding** Plaintiff Pepaj $20,000 in actual damages.

///

**IT IS FURTHER ORDERED awarding** Plaintiff Acosta $25,000 in actual damages.

**IT IS FURTHER ORDERED awarding** Plaintiff Crespo $30,000 in actual damages.

**IT IS FURTHER ORDERED awarding** Plaintiff Terrell $20,000 in actual damages.

**IT IS FURTHER ORDERED denying** without prejudice Plaintiff Melani's Motion for Default Judgment against Chretin's Family, LLC. (Doc. 15).

**IT IS FURTHER ORDERED directing** Plaintiff Melani to refile her Motion for Default Judgment, properly alleging damages sought by Friday, July 11, 2025.

**IT IS FURTHER ORDERED denying** Plaintiffs' Motion for punitive damages and a permanent injunction.

**IT IS FURTHER ORDERED directing** Plaintiffs to file a new Motion for attorney's fees and costs, satisfactory to rules FRCP 54(d), LRCiv 54.1, and LRCiv 54.2 by Friday, July 11, 2025.

Dated this 6th day of June, 2025.

_____
Stephen M. McNamee
Senior United States District Judge